UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GRANT A. WONSEY, JR.,<br><br>                              Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE. Commissioner of Social Security,<br><br>                              Defendant. | Case No. 3:12-cv-05084-KLS<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his application for supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On July 30, 2007, plaintiff filed an application for SSI benefits, alleging disability as of September 28, 1994, due to chronic obstructive pulmonary disease, hypertension, back, arm, shoulder, hearing, and memory problems, depression, and post traumatic stress disorder ("PTSD"). See Administrative Record ("AR") 24, 135, 158. That application was denied upon initial administrative review on January 16, 2008, and on reconsideration on September 2, 2008. See AR 24, 79, 86. A hearing was held before an administrative law judge ("ALJ") on March

ORDER - 1

11, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 40-74.

On April 29, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 24-34.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on December 15, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 416.1481.  On February 2, 2012, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #3.  The administrative record was filed with the Court on April 3, 2012. See ECF #10.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in assessing his residual functional capacity; and (4) in determining him to be capable of performing other jobs existing in significant numbers in the national economy and therefore to be not disabled.  For the reasons set forth below, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds that defendant's decision should be affirmed.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767

ORDER - 2

F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

ORDER - 3

opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff challenges the ALJ's findings regarding the medical opinion source evidence in the record concerning his physical functional capabilities, which read in relevant part:

> . . . [The state agency] Disability Determination Services [("DDS")] opined that the claimant was capable of occasionally lifting and carrying up to 20 pounds and frequently lifting and carrying up to 10 pounds, as well as sitting, standing, and walking for 6 hours in an 8 hour day (with normal breaks). DDS also found the claimant frequently capable of climbing ramps and stairs, and occasionally climbing ladders, ropes and scaffolds, as well as balancing,

ORDER - 4

> kneeling, stooping, crouching, and crawling. He should avoid concentrated exposure to extreme cold, and vibration. [The] DDS' opinion is adopted and granted great weight, as the evidence of record indicates that the claim is still capable of strenuous work around his home and lives a rather rustic lifestyle requiring at least a light level of work to perform his activities of daily living. Furthermore, the longitudinal medical record as a whole supports such a finding.
>
> [Rick] Dickson[, M.D.,] completed a physical evaluation of the claimant for the Washington State [Department of Social and Health Services ("]DSHS["]] dated September 4, 2008 in which he opined that the claimant was restricted to a sedentary work level base[d] on moderate lumbar spine arthritis and marked cervical spine disc disease (Ex. 29F). Dr. Dickson's opinion is granted little weight, as it is not supported by his own clinical findings or other independent imaging studies. . . .
>
> . . .
>
> Additional evaluations prepared for DSHS (including those of Dr. Dickson) are granted little weight as they are not adequately supported by objective medical evidence; nor do they use the same mechanism and standards required by the [Social Security Administration ("SSA")] to determine disability. Furthermore, some are completed by sources not considered acceptable medical sources. Accordingly, they are granted little to no weight, to the extent that they are commensurate with the [residual functional capacity assessment] adopted in this decision (Exs. 5F, 10F, 11F).

AR 31-32. Specifically, plaintiff argues the ALJ erred in relying on the opinion of DDS instead of that of Dr. Dickson. The Court disagrees.

First, plaintiff points out that the DDS opinion is the only one in the record limiting him to performing light, as opposed to sedentary or even more restrictive, work. While this appears to be the case, reliance on that one non-examining opinion is not erroneous if it is supported by other independent evidence in the record, as it is in this case as explained below. See Lester, 81 F.3d at 830-31; Tonapetyan, 242 F.3d at 1149. Plaintiff next states it is important to note that the DDS opinion initially was rendered by a non-physician, who rejected Dr. Dickson's opinions that he was limited to sedentary work or less (see AR 280, 291, 295, 299, 302, 304, 306, 308, 310, 469, 512), on the basis that they were "not fully supported by the objective findings." AR

ORDER - 5

368.  But that examiner's narrative report is actually much more detailed:

> Opinions by Dr. Dickson . . . are not fully supported by the objective findings. Only minimal evidence of degenerative process was found in imaging of the back, hips, knees and ankles.  This would not explain the cl[ai]m[an]t's subjective reports, or support the opinion Dr. Dickson gives.

AR 368.  That narrative continues in relevant part:

> . . . Evidence in the file if [sic] fairly minimal.  DDS attempted to schedule a physical exam for this cl[ai]m[an]t, but the claimant failed to attend the scheduled exams on 11/15/07 and 12/6/07 for a physical evaluation.  Therefore, a determination is made, based on the information in the file.  This information is limited and does not support the opinions offered by his treating source, Dr. R Dickson.  [The medical evidence in the record] indicates x[-]ray evidence of only mild [degenerative disc disease]/[degenerative joint disease] of the knee, hip and ankles.  He does have chronic low back pain and neck pain.  The limits noted by cl[ai]m[an]t are not fully supported by the objective medical evidence. . . .

AR 369.

The above statements are consistent with the ALJ's own findings and supported by the record as a whole, which – while it contains some significant clinical findings – does not provide much in the way objective medical evidence overall for Dr. Dickson's opinions that plaintiff could perform at most sedentary work. See AR 256, 261-66, 279, 284, 290, 294, 298, 301, 303, 305, 307, 309, 390, 392, 394-02, 403, 405-15, 417-19, 434, 436, 468, 475-76, 511, 516, 518, 521, 524, 526, 528, 532, 544-45, 549-50.  In addition, as plaintiff himself acknowledges, the DDS opinion was affirmed by a physician, Guthrie Turner, M.D., and thus it is appropriate to treat that opinion as coming from Dr. Guthrie as well. See AR 466.

Plaintiff further argues the DDS opinion should not have been relied on by the ALJ, because that opinion was made without the benefit of the progress notes from Dr. Dickson and the Bogachiel Medical Clinic – where plaintiff also received treatment – "all of which were complied after" that opinion was offered. ECF #12, p. 13.  But there is no indication in the record

ORDER - 6

or from the DDS opinion itself exactly what medical records were available at the time and considered, although it does appear that at least some indeed were considered. See AR 368-69. In any event, given that as discussed above the weight of the medical evidence, including the progress notes from Dr. Dickson and the Bogachiel Clinic, fail to support the more restrictive sedentary work or less functional assessments, the Court finds no error here.

The Court agrees with plaintiff that the ALJ erred in stating he was granting little weight to some of the other physical evaluations prepared for DSHS that also limited plaintiff to only sedentary work on the basis that they were "completed by sources not considered acceptable medical sources." AR 32. As defendant's own regulations provide, the SSA may use evidence from other sources who are not acceptable medical sources, to show the severity of a claimant's impairments and how that claimant's ability to work is affected thereby.[1] See 20 C.F.R. § 416.913(d).

Equally improper was the ALJ's rejection of other such physical evaluations on the basis that they did not use "the same mechanism and standards required by the [SSA] to determine disability." AR 32. As plaintiff points out, the ALJ did not explain what those differences are, let alone show the description of sedentary work contained in those evaluations fail to correspond substantially to those used by the SSA. See, e.g., AR 257; 20 C.F.R. § 404.1567(a);

---

[1] As plaintiff points out, it appears the only other physical evaluation for DSHS in the record not performed by Dr. Dickson, is one performed by a physician's assistant, in which plaintiff also was restricted to sedentary work. See AR 32, 255-58. A physician's assistant is an "other medical source," who is "not technically deemed to be" an "acceptable medical source," but whose opinion nevertheless is considered "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the" record. SSR 06-03p, 2006 WL 2329939 *3. Further, although"[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals,' . . . depending on the particular facts in a case, . . . an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." Id. at *5. The ALJ in this case did not state he was discounting the physical evaluation performed by the physician's assistant in relation to one that had been performed by an acceptable medical source, but rather he merely noted the fact that it did not come from the latter type of medical source.

ORDER - 7

Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 *3.  On the other hand, as discussed above, the only evaluation of plaintiff's physical capabilities in the record not performed by Dr. Dickson restricted plaintiff as well to at most sedentary work (see AR 255-58), whereas as again discussed above, the ALJ properly noted the objective medical evidence overall failed to support such an assessment.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,

ORDER - 8

1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms.  See id.

> The ALJ in this case began his assessment of plaintiff's credibility by stating as follows:
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment.

AR 28.  Plaintiff argues the ALJ employed improper circular reasoning here, but the Court finds no such thing.  This is merely an introductory paragraph to the specific reasons the ALJ gave for discounting plaintiff's credibility that immediately follow.  In essence, all the ALJ is stating here is that beyond the residual functional limitations he found to be supported by the evidence in the record, plaintiff's subjective complaints are not credible.  The ALJ then goes on to discuss that evidence, including the reasons why plaintiff is not entirely credible, in the remaining body of his decision.  See AR 28-31.  The ALJ committed no error.

Plaintiff further complains the ALJ erred by failing to offer an assessment of which of plaintiff's subjective complaints lack credibility or of the testimony he provided at the hearing in general.  Once more, the Court finds no error here.  There is no requirement that a line-by-line accounting of a claimant's subjective complaints – or his or her testimony overall – must be set forth in the ALJ's decision.  Indeed, all the ALJ must do is identify the complaints he or she finds to be incredible, give "specific, cogent reasons for" disbelieving those complaints and identify the evidence found to undermine them.  Lester, 81 F.3d at 834 (citation omitted); see also Dodrill, 12 F.3d at 918.  This is what the ALJ did in this case in regard to plaintiff's complaints as discussed in greater detail below.  See AR 28-31.

ORDER - 9

More specifically, plaintiff argues the ALJ erred in discounting his credibility on the basis that "the evidence of record indicates that [he] is still capable of strenuous work around his home and lives a rather rustic lifestyle requiring at least a light level of work to perform his activities of daily living." AR 31.  The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  First, such activities can "meet the threshold for transferable work skills." Id.  Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7.

The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id.  In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722.  Under the second ground in Orn, a claimant's activities of daily living can "contradict his [or her] other testimony." 495 F.3d at 639.  The Court agrees with plaintiff that the evidence in the record does not necessarily show he spends a substantial part of his day performing household chores or other activities transferable to a work setting (see AR 53-54, 62-63, 148-50, 167-71, 175-79, 190-94, 253, 487, 506) – although there is some evidence to the contrary (see AR 326-27, 331) – nor does it necessarily contradict his other testimony.  Therefore, the ALJ erred in discounting his credibility on this basis.

The ALJ, however, provided other clear and convincing reasons for finding plaintiff to be not fully credible, none of which are challenged in plaintiff's opening brief. See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued

ORDER - 10

with specificity in briefing will not be addressed); <u>Paladin Associates., Inc. v. Montana Power Co.</u>, 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); <u>Kim v. Kang</u>, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered). As discussed in greater detail below, furthermore, the arguments plaintiff makes in his reply brief are without merit.

The ALJ, for example, noted the objective medical evidence in the record fails to support his claims of disabling physical and mental symptoms and limitations. <u>See</u> AR 28-30. A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. <u>Regennitter v. Commissioner of SSA</u>, 166 F.3d 1294, 1297 (9th Cir. 1998). The ALJ also discounted plaintiff's credibility because:

> Overall, the claimant has displayed a tendency to either exaggerate or withhold information from his medical providers, especially with regards to his use of drugs and alcohol. Dr. Dickson ejected the claimant from his practice after nine years due to the claimant's overuse of prescription hydrocodone, possible drug diversion, and methamphetamine use (Ex. 30F,[ pg]. 11). The claimant has also been less than forthcoming about his alcohol use over the years, asserting sobriety, but also stating that he makes and drinks wine (Ex. 30F)[.] The claimant's pain disorder is quite easily viewed as a mechanism used by the claimant to continue to receive narcotic drugs.
>
> Additionally, prior statements by the claimant seem to imply that he "deserves" SSI benefits because he was not properly compensated for his 1994 [automobile] accident (Exs. 19F, 27F). It would not be impertinent to assume that the claimant's impetus behind his application is not because he feels he is truly disabled, but rather that he is "owed" for his perceived misfortunes throughout the years. The claimant's therapist, Gary Webb seemed to suggest as much (Ex. 27F).

AR 30-31. As noted above, in rejecting a claimant's testimony, the ALJ may consider "ordinary techniques of credibility evaluation," such as the claimant's prior inconsistent statements and other testimony that "appears less than candid." <u>see</u> <u>Smolen</u>, 80 F.3d at 1284. The ALJ also may

ORDER - 11

consider motivation and the issue of secondary gain, as well as a claimant's drug-seeking behavior, in rejecting symptom testimony. See Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).

In his reply brief, plaintiff does challenge the ALJ's findings regarding pain exaggeration and secondary gain motivation. The Court finds the record supports the ALJ here. For example, Dr. Dickson himself commented in early June 2002, that there was "a question of malingering for his low back complaints." AR 417. In early January 2004, again Dr. Dickson commented that "[t]he long-term outlook for [plaintiff wa]s quite poor secondary to his strong conviction that someone else [wa]s responsible for his disability, i.e., the driver of the car that hit him in 1994." AR 413; see also AR 296, 412. Indeed, in early December 2005, Dr. Dickson once more noted plaintiff's "[s]trong conviction of disability," finding he "certainly could" return to "meaningful work" with a "change of attitude." AR 292, 408. As noted by the ALJ, furthermore, plaintiff's mental health therapist stated in late October 2009, that he was "a chronic malingerer and ha[d] limited interest in change." AR 490. Thus, even if these reports are not sufficient to constitute affirmative evidence of malingering, it certainly amounts to clear and convincing evidence of a lack of overall credibility.

Plaintiff asserts he has been diagnosed with a somatoform disorder and the ALJ found he had a severe impairment consisting of a chronic pain syndrome, which could account for his pain magnification. But the above comments from Dr. Dickson and plaintiff's mental health therapist belie this assertion. Plaintiff also argues he was being prescribed significant amounts of pain medication, in contradiction of any inference that he exaggerated his pain complaints in order to receive additional medication. Again, though, the record does not support plaintiff's contention,

ORDER - 12

as one of plaintiff's treatment providers told him in mid-December 2009, that she had "concerns about his diverting medications" (AR 529), and again informed him in early April 2010, that she was "not sure if [he could] take [his] meds appropriately" (see AR 543). Dr. Dickson indicated plaintiff had a problem with over-medication as well. See AR 401, 411, 413, 419.

Lastly, plaintiff argues there is no medical assessment in the record that his underlying impairments involved secondary gain. The issue of secondary gain, however, is not a medical condition subject to diagnosis. In any event, as discussed above, there is plenty of evidence of plaintiff's strong disability conviction, poor attitude and medication diversion to indicate a lack of credibility on plaintiff's part and/or a desire to receive benefits for reasons other than the fact that he is completely disabled from all work. In addition, while the Court agrees that claimants should not be deemed to have a secondary gain motivation based merely on the fact that they are applying for monetary benefits, once more the evidence in this case discussed above is more than sufficient to call plaintiff's credibility into doubt.

III. The ALJ's Residual Functional Capacity Assessment

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do

ORDER - 13

other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ found plaintiff had the physical residual functional capacity:

> **. . . to perform less than the full range of light work . . . The claimant can occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds.  He can stand, walk, and sit for about 6 hours in an 8 hour day.  The claimant can frequently climb ramps and stairs, and occasionally climb ladders, ropes and scaffolds, as well as balance, kneel, stoop, crouch, and crawl.  He should avoid concentrated exposure to extreme cold, and vibration. . . .**

AR 27-28 (emphasis in original).  Plaintiff argues the ALJ instead should have adopted the more restrictive functional assessment provided by Dr. Dickson in his evaluation reports.  Because the ALJ properly rejected Dr. Dickson's functional assessment, he was not required to adopt any of the additional limitations found therein.  Accordingly, the Court finds the ALJ did not err in his assessment of plaintiff's RFC.

IV.	The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

ORDER - 14

1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 42-43. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 69-71. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 32-33.

Plaintiff argues the ALJ should have adopted the vocational expert's additional testimony that he would not be able to be employed if his testimony was accepted and he missed one day of work per month. See AR 71-72. As discussed above, however, the ALJ properly found plaintiff to be not fully credible regarding his testimony and subjective complaints, and therefore was not obligated to include any additional limitations in his RFC assessment based on that testimony or

ORDER - 15

those complaints.  Nor does the substantial evidence in the record support a finding that plaintiff would miss one day of work per month.

Plaintiff further argues that he should have been found disabled based on the direct application of Grid Rules 201.12 or 201.14.  But as noted by defendant, those rules apply only if the claimant is limited to sedentary work, which again the ALJ properly found the weight of the evidence in the record did not support.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.12, § 201.14.  Finally, plaintiff argues he should have been found to be disabled pursuant to Grid Rule 202.04 or Grid Rule 202.06, because he reached advanced age (55 and over) while this matter was pending before the Appeals Council.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 200.00(d), 202.04, 202.06.  Again as noted by defendant, though, the ALJ "is not *required* to use an older age category, even if the claimant is within a few days or a few months of reaching the older age category.  Lockwood v. Commissioner of Social Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010) (emphasis in original).  Rather, the ALJ merely has to "*consider* whether to use the older age category," which was properly done here.  See id. at 1071-72 (emphasis in original).[2]

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded

---

[2] In Lockwood, the Ninth Circuit found the ALJ in that case properly considered whether to use the applicable older age category by doing the following:

> The ALJ mentioned in her decision [the claimant's] date of birth and found that [the claimant] was 54 years old and, thus, a person closely approaching advanced age on the date of the ALJ's decision.  Clearly the ALJ was aware that [the claimant] was just shy of her 55th birthday, at which point she would become a person of advanced age.  The ALJ also cited to 20 C.F.R. § 404.1563, which prohibited her from applying the age categories mechanically in a borderline situation.  Thus, the ALJ's decision shows that the ALJ knew she had discretion "to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." 20 C.F.R. § 404.1563(b).  Finally, we are satisfied the ALJ did not "apply the age categories mechanically" because the ALJ "evaluat [ed] the overall impact of all the factors of [the claimant's] case" when the ALJ relied on the testimony of a vocational expert before she found Lockwood was not disabled.

Id. (internal footnotes omitted).  This is essentially what the ALJ in this case did. See AR 32-33.

ORDER - 16

1 plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

2 DATED this 28th day of September, 2012.

Karen L. Strombom
United States Magistrate Judge

ORDER - 17